**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 23-198-1** |
| | : | |
| **JOSEPH LAFORTE** | : | |

# MEMORANDUM including
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**KEARNEY, J.**                                                      **December 15, 2023**

      Our Grand Jury charged Joseph LaForte in May 2023 with, among other things, obstruction of justice and use of violence to extort payments as part of his controlling role with Complete Business Solutions Group Inc. He retained two experienced law firms who appear to be working through the substantial discovery including learning the names of witnesses. Mr. LaForte now seeks strict home detention instead of incarceration so he can more meaningfully assist his defense.

      But our test is not whether he would have more time to read the discovery in an apartment than correctional officials can offer to him given their security concerns in his Facility. We need to evaluate whether Mr. LaForte presents a danger to the community. We held an extended hearing. The United States convinced us again of danger to the community in his release particularly when he knows the names of witnesses as we approach the requested trial date. Mr. LaForte can access the discovery his lawyers have accessed for months. We ensured correctional officials allowed him and his incarcerated and similarly-charged brother extensive access to a personal laptop computer loaded with discovery as well as wallet drives in his Facility under our protective order. We deny Mr. Laforte's Motion for pretrial release to some form of home detention.

I.    **Findings of fact.**

1.    Joseph LaForte pleaded guilty in October 2006 to multiple counts of grand larceny, money laundering, and conspiracy.

2.    Joseph LaForte pleaded guilty on December 30, 2009 to one count of conspiracy to operate an illegal gambling business.

### *The Grand Jury alleged Joseph LaForte's role at Par Funding.*

3.    Joseph LaForte formed Complete Business Solutions Group, Inc. (known as Par Funding) while on supervised release for conspiracy to operate an illegal gambling business in 2011.

4.    Par Funding offered short-term financing transactions to small businesses Par Funding styled as merchant cash advances.

5.    Par Funding purchased merchant-customers' future receivables at a discounted price. The merchant-customer agreed to repay Par Funding the purchase price plus an additional thirty percent, or more, of the purchase price later.

6.    Par Funding collected these deferred repayments in installments through automatic daily or weekly debits from the merchant-customer's bank accounts.

7.    Par Funding entered "reload" agreements with the merchant-customers. Reload agreements refinanced the company's existing merchant cash advances to merchant-customers and provided additional funding to the merchant-customer.

8.    Joseph LaForte ran the day-to-day operations of Par Funding from 2013 until July 2020.

9.    Par Funding did not identify Joseph LaForte as chief executive officer or president on its corporate documents.

***Joseph LaForte's federal firearm charge.***

10.     Our Grand Jury charged Joseph LaForte with illegally possessing a firearm as a felon on August 7, 2020.

11.     Chief Judge Tucker ordered pretrial release for Joseph LaForte on October 8, 2020.

12.     Joseph LaForte's trial for illegally possessing a firearm as a felon is set for January 22, 2024.

***Investigations lead to a receiver for Par Funding.***

13.     The United States District Court for the Southern District of Florida appointed Ryan Stumphauzer as Receiver of Par Funding's assets in *SEC v. Complete Business Solutions Group, Inc. et al*, No. 9:20-cv-81205.

14.     The Receiver took control of Joseph LaForte's assets.

15.     Pennsylvania attorney G.A. is counsel to Receiver Stumphauzer.

16.     The Receiver assumed ownership of Joseph LaForte's wife's trust's properties.

***Alleged conduct towards appraiser O.F.***

17.     O.F. provided Joseph LaForte valuations of the properties now held by the court-appointed Receiver.

18.     Joseph LaForte visited O.F. in late November 2022 while supervised under Chief Judge Tucker's pretrial release Order.

19.     Joseph LaForte did not like O.F.'s valuations.

20.     Joseph LaForte threatened to shoot O.F. and his wife. Joseph LaForte told O.F. Joseph LaForte had "500 men on the streets." O.F. understood Joseph LaForte's statement to mean Joseph LaForte had the manpower to hurt O.F. and his family.

21.     Joseph LaForte told O.F. he would return several days later to pick up O.F.'s revised valuations.

22.     O.F. feared Joseph LaForte would attack him and his family and did not immediately report the threats.

23.     O.F. later increased his valuation of Joseph LaForte's properties held by the Receiver.

### *Alleged conduct towards Par Funding client S.P. and his spouse C.P.*

24.     S.P. is a seventy-six-year-old former merchant-client of Par Funding.

25.     Joseph LaForte believed S.P. served as a cooperating witness for government claims against Joseph LaForte.

26.     Joseph LaForte attacked S.P. in a South Philadelphia restaurant in January 2023.

27.     Joseph LaForte kicked and hit S.P. and accused him of "being a rat."[1]

28.     S.P. returned home after Joseph LaForte attacked him and told his wife, C.P., about the attack.

29.     C.P. returned to the restaurant to confront Joseph LaForte after Joseph LaForte attacked S.P.

30.     Several patrons at the restaurant physically restrained Joseph LaForte from confronting C.P.

31.     C.P. believed Joseph LaForte became so enraged she worried he would hit her.

### *Alleged conduct towards Par Funding Receiver's Attorney G.A.*

32.     Judge Ruiz set a virtual hearing for February 28, 2023 in *SEC v. Complete Business Solutions Group, Inc. et al.*, No. 9:20-cv-81205.

33.     Joseph LaForte and his brother James LaForte met at Joseph LaForte's house on February 27, 2023. James LaForte spent the night at Joseph LaForte's house. Both Joseph LaForte and James LaForte traveled into Philadelphia separately and at different points in time on February 28, 2023.

34.     Joseph LaForte and James LaForte met with Joseph LaForte's criminal defense lawyer in Center City, Philadelphia. Joseph LaForte and James LaForte shopped for cigars and a winter coat for James LaForte.

35.     Joseph LaForte returned home. He then logged onto the scheduled virtual hearing in his Securities and Exchange Commission matter. Attorney G.A. attended the hearing on behalf of the Par Funding Receiver.

36.     Joseph LaForte called James LaForte less than one minute after the Securities and Exchange Commission virtual hearing ended. The two spoke on the phone for less than one minute. Video evidence shows James LaForte walked toward Attorney G.A.'s office a few minutes after the phone call with Joseph LaForte.

37.     James LaForte remained outside Attorney G.A.'s office for twenty-five minutes following his phone call with Joseph LaForte and the Securities and Exchange Commission hearing's conclusion. Attorney G.A. left his office thirty minutes after the Securities and Exchange Commission hearing. Video evidence shows James LaForte cross the street and run up behind Attorney G.A. James LaForte assaulted Attorney G.A. with a hard object leaving Attorney G.A. bleeding from the head and requiring seven staples in his head.

38.     Joseph LaForte and James LaForte had two telephone conversations shortly after James LaForte assaulted Attorney G.A.

*Alleged March 2023 conduct.*

39.     Co-defendant Perry Abbonizio pleaded guilty to conspiring with Joseph LaForte in early 2023.

40.     Defendant Abbonizio received a threatening phone call from a male voice with a "spoofed" phone number on March 2, 2023.

41.     The caller threatened Defendant Abbonizio to "retract those lies or we're coming for the girls." The caller referenced the street names where Defendant Abbonizio's daughters lived. The caller mentioned he "put[] a guy in the hospital" several days earlier.

42.     Defendant Abbonizio's adult daughter received threatening phone calls from a male voice with the same spoofed number on March 2, 2023. The caller told Defendant Abbonizio's adult daughter he knew where she lives and mentioned the streets where her house is located.

43.     Extortion Victim No. 6 received a threatening phone call from a male voice with the same spoofed number on March 2, 2023. The caller stated "We're coming after you. We're going to split your head open you cunt."

44.     Agents arrested Joseph LaForte's brother, James LaForte, outside of Joseph LaForte's home on March 6, 2023. The Bureau recovered a notecard from James LaForte's pocket containing the names and cellular telephone numbers for Defendant Abbonizio, his wife, adult daughter, the partial addresses of four Abbonizio family members, the first name of Defendant Abbonizio's second daughter, the name and cellular telephone number for Extortion Victim No. 6, and other names and contact information for additional individuals associated with Joseph LaForte.

***Our Grand Jury returns a superseding indictment of Joseph LaForte.***

45.     Our Grand Jury charged Joseph LaForte in a superseding indictment on May 18, 2023, with, among other things, wire fraud, conspiring to use repeated threats of violence to extort payments from customers, conspiracy to obstruct justice, obstruction of justice, and tampering.

46.     The Grand Jury found Joseph LaForte has long threatened others with physical harm.

47.     The Grand Jury found Joseph LaForte directed others to intimidate and injure delinquent merchant-customers into paying their debts.

48.     The Grand Jury found Joseph LaForte requested a delinquent merchant-customer to house Joseph LaForte's enforcer in the customer's home until the customer met the repayment terms.

49.     The Grand Jury found the enforcer then called Joseph LaForte and placed him on speaker phone while the enforcer "made hostile, threatening, and intimidating statements" to the delinquent customer causing the delinquent customer to cry.

50.     The Grand Jury found Joseph LaForte threatened to "blow up" Extortion Victim No. 6's home if she did not meet her repayment schedule.

51.     The Grand Jury found Joseph LaForte threatened to blow up Extortion Victim No. 9's car.

52.     The Grand Jury found Joseph LaForte threatened Extortion Victim No. 9 by intimating Extortion Victim No. 9's children "would not be there" when Extortion Victim No. 9 went to pick them up from school.

53. The Grand Jury found Joseph LaForte threatened to drown Extortion Victim No. 9 by weighing down Extortion Victim No. 9's feet with cement causing Extortion Victim No. 9 to "end up at the bottom of the Hudson River."

54. The Grand Jury found Joseph LaForte told Extortion Victim No. 9 he would place a bomb in Extortion Victim No. 9's car causing the car to explode with Extortion Victim No. 9 in the car.

### *The United States moves successfully for pretrial detention.*

55. The United States moved for Joseph LaForte's pretrial detention on May 25, 2023 arguing no condition or combination of conditions would reasonably assure the safety of the community, witnesses, parties, and lawyers in both Joseph LaForte's Securities Exchange Commission matter and this current criminal proceeding.

56. Judge Lloret granted the United States' Motion for pretrial detention after holding extensive oral argument on June 1, 2023. Judge Lloret found the United States proved by clear and convincing evidence (1) there exists no condition or combination of conditions to reasonably assure the safety of other persons and the community, and (2) Joseph LaForte's release would pose a serious risk he will obstruct or attempt to obstruct justice.

### *We granted complex case designation and set trial for April 2024.*

57. The United States moved on June 5, 2023 for complex case designation and speedy trial continuance.

58. We granted the United States' unopposed Motion for complex case designation and speedy trial continuance postponing our scheduled July 31, 2023 trial date to April 11, 2024 at defense counsel's request during our June 8, 2023 conference with all counsel.

59.     The United States produced substantial discovery to the incarcerated Joseph LaForte.

60.     The United States produced grand jury testimony and the names of witnesses testifying before our Grand Jury.

61.     Joseph LaForte's counsel provided the United States with a personal laptop. The United States loaded the balance of Joseph LaForte's discovery onto the laptop including Joseph LaForte's business emails. We granted the incarcerated Joseph and James LaForte access to personal laptops on August 2, 2023. The Federal Detention Center agreed to allow Joseph LaForte five hours of access per week to the personal laptop. The United States, Joseph LaForte's counsel, and counsel for the Federal Detention Center repeatedly worked to resolve technical issues concerning the personal laptop.[2] The United States delivered the laptop to counsel for the Federal Detention Center on September 29, 2023.

62.     Joseph LaForte's counsel submitted "wallet drives" capable of storing 256 gigabytes of data to the United States. The United States loaded the balance of the produced discovery as to Joseph LaForte on the wallet drives excluding Joseph LaForte's business emails. Joseph LaForte can access the wallet drives on the unit computers at the Federal Detention Center.

**II.    Conclusions of law.**

63.     Joseph LaForte presents a demonstrated danger to the community requiring we deny his Motion for pretrial release under section 3142(g).

64.     Joseph LaForte's history of witness intimidation occurring while on pretrial release in his separate federal criminal trial requires we uphold Judge Lloret's denial of pretrial release.

65.     Joseph LaForte fails to demonstrate pretrial release is necessary for him to prepare his defense because the United States afforded Joseph LaForte access to: (1) a laptop computer

with the balance of the produced discovery to which Joseph LaForte has access for five hours per week; and (2) a series of wallet drives containing the balance of the produced discovery excluding his business emails to which Joseph LaForte has access and can use on the public computers housed in Joseph LaForte's unit.[3]

## III.    Analysis.

We must find "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community" to keep Joseph LaForte in custody awaiting his April 2024 trial.[4] The United States must prove by clear and convincing evidence Joseph LaForte is a danger to the community.[5] Congress requires judges issuing pretrial detention orders consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and [] whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law;" and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[6]

Congress allows incarcerated persons to move for revocation of a pretrial detention order.[7] We apply a de novo standard of review to Judge Lloret's pretrial detention Order.[8]  Congress, under section 3142(i)(4), allows judges who previously denied pretrial release to later permit temporary release "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense."[9] Our Court of Appeals has not articulated a standard for

reviewing section 3142(i)(4) motions arguing release is necessary for the defendant to prepare their defense.[10] But our colleagues require defendants moving for temporary release to demonstrate pretrial release is necessary and not simply "helpful, preferable, or even ideal for a defendant's trial preparations."[11] Joseph LaForte has the burden of demonstrating pretrial release is necessary to prepare for his defense.

We deny Joseph LaForte's motion to revoke Judge Lloret's pretrial detention Order. We find ample evidence Joseph LaForte remains a danger to the community, to those testifying in this criminal proceeding, and possibly to those involved in the Securities and Exchange Commission matter in Florida. We also find no condition or combination of conditions relating to strict home detention could eliminate the threat Joseph LaForte poses to the community and testifying witnesses. He personally engaged in physical and verbal threats to potential witnesses over the last calendar year while on pretrial release in a separate case in our District. He threatened to shoot O.F. and his wife or, alternatively, have one of "500 men on the streets" shoot O.F. and his wife. Joseph LaForte physically assaulted S.P. accusing him of cooperating with the government. Joseph LaForte became so enraged when S.P.'s wife came to confront him she feared he would strike her. He also is allegedly able to direct or monitor harm without leaving his home. Joseph LaForte called his brother James LaForte alerting him G.A. left a virtual hearing Joseph LaForte and G.A. attended allowing James LaForte to wait outside G.A.'s office to violently assault G.A.

There are no changed circumstances convincing us Joseph LaForte would not continue intimidating witnesses. The risk is now greater: the United States produced grand jury documents and testimony from potential witnesses to Joseph LaForte including the witnesses' names. We cannot conceive of a set of conditions providing the community and known witnesses against Joseph LaForte greater protection than continuing to detain him in Federal Detention Center.

We deny Joseph LaForte's alternative argument we should grant his pretrial release as necessary for him to prepare for his defense. The Federal Detention Center is providing Joseph LaForte unprecedented access to discovery along with his counsel. The United States loaded a defense counsel purchased laptop with the balance of Joseph LaForte's produced discovery to which Joseph LaForte has access five hours per week. The United States provided Joseph LaForte wallet drives containing the balance of his produced discovery excluding his business emails to which Joseph LaForte has access through the unit computers at Federal Detention Center Philadelphia. We are mindful this is a complex case involving several years of charged conduct and hundreds of millions of dollars. But Joseph LaForte currently receives greater access to his discovery than most incarcerated persons.

---

[1] Joseph LaForte excuses his conduct by clarifying he attacked S.P. for demanding free food at the restaurant and characterized the attack as a "little boot in the rearend." ECF No. 78 at 23:20-24:19.

[2] Federal Detention Center counsel explained the Bureau of Prisons permitted an incarcerated person a laptop for discovery review only once in her four years working with the Bureau of Prisons. ECF No. 70 at 4-5.

[3] The United States also recently provided Joseph LaForte's counsel a copy of a searchable document review platform containing a re-production of the balance of the previously produced discovery.

[4] 18 U.S.C. § 3142(e)(1).

[5] 18 U.S.C. § 3142(f)(2)(B); *United States v. Himler*, 797 F.2d 156, 160-61 (3d Cir. 1986).

[6] 18 U.S.C. § 3142(g)(1)-(4).

[7] 18 U.S.C. § 3145(b).

[8] *United States v. Delker*, 757 F.2d 1390, 1395 (3d Cir. 1985).

[9] 18 U.S.C. § 3142(i)(4).

[10] *See United States v. Cammarata*, No. 21-427-01, 2022 WL 4280480, at *8 n.9 (E.D. Pa. Sept. 15, 2022).

[11] *United States v. Gulley*, No. 18-9, 2021 WL 663710, at *2 (W.D. Pa. Feb. 19, 2021).